UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: 24-cv-22749-RUIZ/LOUIS

JANE DOE (A.C.),

    Plaintiff,

vs.

CARNIVAL CORPORATION,

    Defendant.
_____/

**DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Defendant, Carnival Corporation ("Carnival"), moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and requests that the Court dismiss Counts II–IV in the operative complaint and strike all prayers for punitive damages.

## TABLE OF CONTENTS

Introduction .......................................................................................................................... 3

Relevant Background ........................................................................................................... 3

Memorandum of Law ........................................................................................................... 4

I.      Standards of Law ....................................................................................................... 4

    A. Failure to State a Claim under Rule 12(c) ........................................................... 4

    B. Federal General Maritime Law ............................................................................ 5

II.     The strict liability claim precludes the negligence claims. .................................... 6

III.    Punitive damages are unavailable because Plaintiff does not sufficiently allege intentional misconduct. ........................................................................................................... 8

    A. *Amtrak*'s intentional misconduct standard remains binding. .............................. 8

    B. Absent intentional misconduct, punitive damages are unavailable even under the strict liability standard. ........................................................................................................ 10

    C. There are no allegations that Carnival committed intentional misconduct. ...................... 13

        i. The claims for punitive damages sound only in negligent failure to warn. .............. 13

        ii. Plaintiff does not adequately allege that there is a growing epidemic. ..................... 14

Conclusion ......................................................................................................................... 15

CASE NO.: 24-CV-22749-RAR

## INTRODUCTION

Plaintiff alleges she was sexually assaulted by a Carnival employee while on a cruise in September 2023. Through this action, Plaintiff seeks pecuniary and nonpecuniary damages from Carnival, including punitive damages, through strict liability and negligence theories.

Despite the negligence claims, this should be a one-count case for strict liability. If Plaintiff proves that the sexual assault occurred, then she will be fully compensated for her personal injuries through the strict liability count. Negligence theories will not add to Plaintiff's recovery or otherwise provide a separate basis for liability. They will only broaden discovery into issues that will not result in additional or different liability. Plaintiff's three negligence counts, therefore, should be dismissed as being redundant of and subsumed within the strict liability claim.

For any claim that survives dismissal, punitive damages should be unavailable, including the strict liability claim. Intentional misconduct by Carnival, not the crewmember, is required to impose punitive damages against Carnival. But Plaintiff provides insufficient factual allegations to support that Carnival committed intentional misconduct itself. Without allegations that rise to intentional misconduct by Carnival, the prayers for punitive damages should be dismissed.

In conclusion, this complaint should be narrowed to whether the sexual assault occurred and, if so, Plaintiff's compensatory damages resulting from Carnival's strict liability. All other claims and prayers for damages should be dismissed for failure to state a claim upon which relief can be granted.

## RELEVANT BACKGROUND

Plaintiff was a passenger onboard the *Carnival Sunshine* in September 2023. [ECF No. 1 at ¶ 7, ¶ 10]. She alleges that she encountered a Carnival crewmember who was handing out towels and who asked Plaintiff for her room number and phone number. *See id.* at ¶¶ 11–13. The crewmember messaged Plaintiff on WhatsApp throughout that day, and later that evening, the

MASE SEITZ BRIGGS

crewmember asked Plaintiff to call him from her cabin phone. *See id.* at ¶ 14. The crewmember then went to Plaintiff's cabin and asked to come inside, which Plaintiff permitted. *See id.* at ¶ 15. Once inside, the crewmember allegedly sexually assaulted Plaintiff. *See id.* at ¶ 16.

Plaintiff filed the subject lawsuit in July 2024 and raised four counts against Carnival. The first count is for strict vicarious liability for the crewmember's intentional torts. *See id.* at p. 5–6. The second count alleges negligent failure to warn, and the third sounds in negligent security. *See id.* at 6–10. The fourth and final count alleges "general negligence," which includes claims for negligent policies, training, and supervision. *See id.* at ¶ 43(b)–(e). Through this motion, Carnival seeks complete dismissal of the negligence claims (Counts II–IV) and dismissal of the prayers for punitive damages in every surviving claim.

<u>MEMORANDUM OF LAW</u>

I. **Standards of Law**

A. **Failure to State a Claim under Rule 12(c)**

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings any time after the pleadings are closed. *See Lillian B. ex rel. Brown v. Gwinnett County School Dist.*, 631 F. App'x 851, 853 (11th Cir. 2015) ("The pleadings are closed only when a complaint and answer have been filed."). Matters outside of the pleadings are disregarded in a motion under Rule 12(c). *See Taylor v. Alabama*, 275 F. App'x 836, 839 (11th Cir. 2008).

Within a motion for judgment on the pleadings, a party may raise the defense of failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(h)(2)(B). The standard for a Rule 12(c) motion for failure to state a claim is the same as a Rule 12(b)(6) motion to dismiss; their distinctions are "mere technicalities" due only to timing and semantics. *See Vtrax Technologies Licensing, Inc. v. Siemens Communications, Inc.*, Case No.: 10-CV-80369-RYSKAMP/VITUNAC, 2010 WL 11452334, *2 (S.D. Fla. 2010) (construing a 12(b)(6) motion

as a 12(c) motion because it was filed on the same day as the answer). Dismissal for failure to state a claim under either rule is warranted "when it appears that the plaintiff has little or no chance of success, i.e., when the complaint on its face makes clearly baseless allegations or relies on legal theories that are indisputably meritless." *Aruanno v. Martin County Sheriff*, 343 F. App'x 535, 536 (11th Cir. 2009).

To survive dismissal, therefore, the complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *See Martins v. Royal Caribbean Cruises, Ltd.*, 174 F. Supp. 3d 1345, 1350 (S.D. Fla. 2016) (citing *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)). Legal conclusions unsupported by factual allegations must be disregarded, as they are "not entitled to the assumption of truth" generally afforded to allegations in a complaint. *Iqbal*, 556 U.S. at 678–79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### B. Federal General Maritime Law

General maritime law applies in cases, such as this one, that allege torts in navigable waters. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1321 (11th Cir. 1989). General maritime law is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864–65 (1986). Under binding maritime law, a cruise line is strictly liable for assaults of its crewmembers on passengers. *See Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 913 (11th Cir. 2004). But pursuing a strict liability claim under this maritime doctrine will restrict a plaintiff from simultaneously

raising a negligence claim. *See Garcia v. Carnival Corp.*, Case No. 13-21628-civ-ALTONAGA/O'Sullivan, 2014 WL 12531509, *3 (S.D. Fla. Apr. 10, 2014); *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1337 (S.D. Fla. 2012).

**II.     The strict liability claim precludes the negligence claims.**

Negligence claims cannot be raised with strict liability claims when the negligence claims are premised on a failure to prevent the intentional tort that gives rise to strict liability. Plaintiff, however, raises three negligence counts that are premised on Carnival failing to prevent the underlying intentional tort. The three negligence counts should be dismissed for being wholly subsumed within the strict liability count.

This doctrine has developed in two cases styled *Garcia v. Carnival Corp.* and a third case named *Doe v. Norwegian Cruise Lines, Ltd.*, No. 23-CV-24236, 2024 WL 3916800 (S.D. Fla. Aug. 22, 2024), in which Judge Bloom affirmed this principal less than month ago. In the 2014 *Gonzalez* case, the plaintiff alleged that she was involved in a marital dispute before Carnival Security intervened. *See* 2014 WL 12531509 at *1. She contended Carnival Security battered and sexually assaulted her after intervening. *See id.* She raised two counts: one for strict liability for the assaults and batteries; and the other for Carnival negligently failing to respond to the martial disagreement, failing to properly train and supervise its employees, and failing to use an appropriate amount of force. *See id.* at *2–3. Judge Altonaga granted summary judgment on all negligence theories. Because "Carnival cannot be found negligently liable for the commission of the same intentional tort for which Carnival is strictly liable," the claims "stemming from the actions of Carnival's security personnel" had to be dismissed. *See id.* at *3.

Judge Altonaga relied on a case decided two years earlier by Judge Moore. *See id.* at *3 (citing *Garcia*, 838 F. Supp. 2d at 1337). In that case, the plaintiff purportedly had a disagreement with an onboard bartender and was then approached by seven crewmembers who physically

assaulted her. *See Garcia*, 838 F. Supp. 2d at 1336. The complaint was a shotgun pleading that commingled intentional tort claims with claims that the "Defendant failed to prevent intentional torts against Garcia." *See id.* at 1337. The court held that "it is improper to state a claim for negligence premised solely on the defendant's alleged commission of an intentional tort." *Id.* Holding Carnival negligent for failing to prevent the crewmembers' intentional torts would "eviscerate any distinction between tort liability premised on negligence and tort liability premised on intentional tortious activity." *Id.* Because the plaintiff could proceed on a strict liability theory, the negligence claims were dismissed with prejudice in the 2012 *Garcia* case.

In an order on August 22, 2024, Judge Bloom analyzed both *Garcia* cases in granting a motion to dismiss involving an alleged crewmember-on-passenger assault. *See Doe*, 2024 WL 3916800 at *4. Like this case, the plaintiff in *Doe* raised negligence theories, such as negligent security and negligent training, alongside a claim for strict liability. The defendant argued in a Rule 12(b)(6) motion that the negligence claims should be dismissed because the alleged negligence was premised on the same underlying tort, and the court agreed. *See id.* at *4 ("Because such theories cannot be raised in conjunction with a strict liability claim . . ., the Court should dismiss the negligence claim . . . .").

The rationale from *Garcia*, *Garcia*, and *Doe* applies here. If Plaintiff proves that the alleged assault happened, then she will be compensated for her injuries via the strict liability claim. The negligence claims will not add anything to a potential verdict. But if Plaintiff does not prove that the sexual assault occurred, then the negligence claims will fail as well as the strict liability claim. Either way, Plaintiff's negligence theories would be entirely redundant of the strict liability claim. Allowing them to proceed would "eviscerate any distinction between tort liability premised on

negligence and tort liability premised on intentional tortious activity." *See Garcia*, 838 F. Supp. 2d at 1337. And they will broaden discovery into issues that will not result in additional liability.

This case does not hinge on whether Carnival breached a duty of care. Dispositive is only whether the alleged assault occurred. Permitting the negligence counts to proceed will only elongate and broaden discovery into negligence theories that will result in no additional damages. Under *Garcia* et al., the Court should dismiss Counts II–IV.

### III. Punitive damages are unavailable because Plaintiff does not sufficiently allege intentional misconduct.

Punitive damages are available against a maritime employer only upon a showing of intentional misconduct by the employer itself or a showing that the employee authorized or ratified its employee's tortious conduct. There is no allegation to support either conclusion. Therefore, the Court should dismiss Plaintiff's prayers for punitive damages in every surviving count.

#### A. *Amtrak*'s intentional misconduct standard remains binding.

Plaintiff cites incorrect law in her complaint to support punitive damages. She relies on *Lobegeiger v. Celebrity Cruises, Inc.*, which allowed for claims of punitive damage "in all actions under general maritime law unless specifically limited by Congress." *See* No. 11-21620-cv-ALTONAGA, 2011 WL 3703329, *6 (S.D. Fla. Aug. 23, 2011). The rationale in this case, however, conflicts with binding case law.

Under general maritime law, passengers' recovery options are limited to pecuniary damages "except in exceptional circumstances such as . . . those very rare situations of intentional wrongdoing." *See In re Amtrak Sunset Ltd. Train Crash*, 121 F.3d 1421, 1429 (11th Cir. 1997) ("*Amtrak*"). *Amtrak* involved a train that derailed and collided with a vessel, which caused passenger deaths over state territorial waters. The district court held Alabama's wrongful death law could supplement the damages allowed under maritime law, and thus punitive damages were

available. But the Eleventh Circuit reversed, holding Alabama's wrongful death statute, which allowed punitive damages upon a finding of gross negligence, conflicted with general maritime law, which requires a finding of intentional conduct.

*Amtrak* remains the standard for ship passenger claims, but seamen are held to a different standard. They are entitled to maintenance and cure, which is an ancient doctrine akin to workers' compensation designed to insure crewmembers after suffering illness or injury while in service of the vessel. When an employer-shipowner arbitrarily or willfully denies a seamen their maintenance and cure, punitive damages are available, as established by *Atlantic Sounding v. Townsend*, 557 U.S. 404, 414–15 (2009).

Two independent standards thus emerged in light of *Atlantic Sounding*: (1) seamen can obtain punitive damages upon a showing of either gross negligence or intentional misconduct in not paying maintenance and cure; and (2) passengers can obtain nonpecuniary damages for personal injury only upon a showing of intentional misconduct.

Though the standards for crewmember and passenger claims are independent doctrines, they were mistakenly conflated in two cases that interpreted *Atlantic Sounding* shortly after it was rendered, including *Lobegeiger*. *See* 2011 WL 3703329 at *7 ("Therefore *Amtrak*, to the extent that it foreclosed a plaintiff's right to seek punitive damages in a personal injury case under general maritime law, is clearly inconsistent with *Atlantic Sounding II* and is no longer the correct rule of decision in the Eleventh Circuit."). *See also Doe v. Royal Caribbean Cruises, Ltd.*, Case No. 11-23323-CIV, 2012 WL 920675 (S.D. Fla. 2012). Despite what those anomalous cases held, *Atlantic Sounding* did not abrogate *Amtrak*. Rather, *Atlantic Sounding* held only that a vessel owner may be liable for punitive damages if it recklessly, wantonly, willfully, or intentionally fails to pay maintenance and cure. It did not touch the standard for non-pecuniary damages in passenger

personal injury claims established in *Amtrak*, as confirmed by the Eleventh Circuit. *See Eslinger v. Celebrity Cruises, Inc.*, 772 F. App'x 872, 873 (11th Cir. 2019) (citing *Amtrak*, 121 F.3d at 1429) ("Our court has held that Plaintiffs may not recover punitive damages . . . for personal injury claims under federal maritime law."); *Petersen v. NCL (Bahamas) Ltd.*, 748 F. App'x 246, 252 (11th Cir. 2018) ("Nothing in [*Atlantic Sounding*] undermines our holding in *In re Amtrak*."). *See also Hall v. Carnival Corp.*, 536 F. Supp. 3d 1306, 1311–13 (S.D. Fla. 2021); *Ginley v. Dutra Dredging Co.*, No. 19-23487-CIV, 2020 WL 13379369, *2–4 (S.D. Fla. June 30, 2020).

The Court should analyze Plaintiff's punitive damages claims under the *Amtrak* standard: to impose punitive damages, Plaintiff must prove that "exceptional circumstances" exist, such as "those very rare situations of intentional wrongdoing," which appears to be unprecedented in personal injury cases governed by federal general maritime law. *See Amtrak*, 121 F.3d at 1429 ("We are aware of no decision in the Supreme Court or in any of the circuit courts which has authorized punitive damages in a personal injury case."). Plaintiff's citation to *Lobegeiger* in her complaint should be disregarded because *Lobegeiger* conflicts with *Amtrak* and wrongly relies on the maintenance and cure standard espoused in *Atlantic Sounding*.

### B. Absent intentional misconduct, punitive damages are unavailable even under the strict liability standard.

Imposing strict liability against a shipowner like Carnival does not automatically transpose the assailant's actions onto the shipowner for purposes of punitive damages. In other words, even if the crewmember acted intentionally, the crewmember's intent does not carry to the cruise line. Instead, for punitive damages to lie, there must be intentional misconduct by the shipowner itself or ratification or authorization of the employee's intentional tort. Because Plaintiff has no allegation to support intentional misconduct or ratification or authorization, the Court should dismiss Plaintiff's claims for punitive damages in all counts, including the strict liability claim.

Some cases in this district have reached the incorrect conclusion as to the availability of punitive damages for strict vicarious liability claims. *See Doe v. Celebrity Cruises, Inc.*, 389 F. Supp. 3d 1109, 1117 (S.D. Fla. 2019). In *Doe*, for example, the court denied the defendants' motion to dismiss the prayers for punitive damages, holding the assailant's "intent would carry to Celebrity as a result of it being strictly liable for the intentional misconduct of its crewmembers . . . ." *Id.* This reasoning is incorrect: a shipowner can be liable for punitive damages only for its conduct, even under a strict liability standard.

The Supreme Court first limited the availability of punitive damages in *The Amiable Nancy*, 16 U.S. 546 (1818) (Story, J.) (prohibiting the imposition of punitive damages against privateers). Seventy-five years later, the Supreme Court expanded its holding by prohibiting punitive damages for vicarious liability against a common carrier absent any direct participation in the employee's tort. *See Lake Shore & M.S. Ry. Co. v. Prentice*, 147 U.S. 101, 107 (1893) ("*Lake Shore*") ("Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as a warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive, or malicious intent on the part of the agent.").

In *Lake Shore*, the Supreme Court rejected the notion that the employee's actions are imputed onto the common carrier for purposes of punitive damages. *See id.* The Supreme Court's opinion in *Lake Shore* remains binding, and the case provided the grounds for the Restatement

(Second) of Torts, Section 909,[1] which has been generally adopted by the other circuits for federal maritime law. *See Muratore v. M/S Scotia Prince*, 845 F.2d 347, 354–56 (1st Cir. 1988); *Protectus Alpha Nav. Co., Ltd. v. North Pac. Grain Growers, Inc.*, 767 F.2d 1379, 1385–87 (9th Cir. 1985). *See also U.S. Steel Corp. v. Fuhrman*, 407 F.2d 1143, 1148 (6th Cir. 1969), *adopted in Matter of P&E Boat Rentals, Inc.*, 872 F.2d 642, 650 (5th Cir. 1989) *and CEH, Inc. v. F/V Seafarer*, 70 F.3d 694, 702–05 (1st Cir. 1995) (rejecting "wholesale adoption" of Section 909(c) under general maritime law and imposing an even higher standard for punitive damages arising from managerial misconduct because, when "read literally, [Section 909(c)] could impose liability in circumstances that do not demonstrate any fault on the part of the principal").

In sum, to impose punitive damages against a maritime employer, the plaintiff must show intentional misconduct on the part of the shipowner, or authorization or ratification of an employee's intentional tort—essentially, one of the elements in Section 909 of the Restatement should be present for punitive damages to be awarded. Cases like *Doe v. Celebrity Cruises, Inc.*, should be rejected for conflicting with these maritime appellate authorities. *See* 389 F. Supp. 3d

---

[1] "Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,

    (a) the principal authorized the doing and the manner of the act, or

    (b) the agent was unfit and the principal was reckless in employing or retaining [the agent], or

    (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

    (d) the principal or a managerial agent of the principal ratified or approved the act."

Restatement (Second) of Torts, § 909.

1109, 1117 (S.D. Fla. 2019). For purposes of punitive damages, the intent of the crewmember should not "carry" to the defendant, *see id.*, even if the defendant is a common carrier and strictly liable for the underlying intentional tort. *See Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322–23 (M.D. Fla. 2002) (striking punitive damages claims despite acknowledging that the cruise line would be strictly liable for intentional torts arising from sexual assault). *See also Doe*, 2024 WL 3916800 at *7 (dismissing prayer for punitive damages in strict liability claim); *Garcia*, 2014 WL 12531509, *2–3 (S.D. Fla. Apr. 10, 2014) (same); *Fiorillo v. Carnival Corp.*, No. 12-21599-CIV-COHN, 2013 WL 632264 (S.D. Fla. Feb. 20, 2013) (same).

### C. There are no allegations that Carnival committed intentional misconduct.

Nothing in the Second Amended Complaint could plausibly lead to a jury finding that Carnival acted with intentional misconduct. There is only one allegation even relevant to punitive damages. In Paragraph 20, Plaintiff contends Carnival committed "willful and outrageous" conduct by not warning its passengers about "a growing epidemic of rape and sexual assault at sea." But this allegation is insufficient for two reasons: (1) the alleged facts sound only in negligent failure to warn, not an intentional tort; and (2) Plaintiff provides no facts to suggest that there is actually "a growing epidemic of rape and sexual assault at sea."

*i.  The claims for punitive damages sound only in negligent failure to warn.*

District courts regularly dismiss claims for punitive damages when they are based on conclusory allegations of willfulness. *See Mayer v. Carnival Corp.*, --- F. Supp. 3d ---, No. 24-CV-20160, 2024 WL 1759145, *6 (S.D. Fla. Apr. 24, 2024) (dismissing prayer for punitive damages despite the plaintiff claiming that the defendant acted with a "willful, wanton disregard for the safety of its passengers"). When there are "*no* facts" that raise the allegations of willfulness "'above the speculative level'" sufficient to meet *Amtrak*, the Court should dismiss the claims for punitive damages. *See id.* (quoting *Twombly*, 550 U.S. at 555) (emphasis in original).

Here, no factual allegations to suggest that Carnival committed intentional misconduct by not warning its passengers about the "growing epidemic" of sexual assaults at sea. Plaintiff contends Carnival "willfully chooses not to warn its passengers about rapes and sexual assaults aboard its ships so as to not scare any prospective passengers away." [ECF No. 1 at 4, ¶ 20]. But this allegation eviscerates any distinction between negligent failure to warn and an intentional tort. In other words, even assuming the allegation is true, Carnival not providing a warning does not rise to a "very rare situation[] of intentional wrongdoing." *See Amtrak*, 121 F.3d at 1429. Instead, it sounds like a garden-variety negligent failure to warn claim.

Without intentional misconduct, Carnival cannot be liable for punitive damages, and not warning passengers does not rise to intentional misconduct. Therefore, the prayers for punitive damages fail to state a claim upon which such relief can be granted.

> ii.   *Plaintiff does not adequately allege that there is a growing epidemic*.

Plaintiff alleges that Carnival breached a duty to warn of "a growing epidemic of rape and sexual assault at sea," but she does not provide facts that indicate there is actually a "growing epidemic" to warn about. Instead, Plaintiff merely alleges that there have been twenty-five sexual assaults committed by crewmembers in seven years. [ECF No. 1 at 3–4, ¶ 19]. There are no facts about growth (e.g., year-to-year increases) or context to suggest that this number represents an "epidemic." Without factual allegations to support the truth of there being a "growing epidemic of rape and sexual assault at sea," Carnival cannot have a duty to warn of such a growing epidemic.

CASE NO.: 24-CV-22749-RAR

## CONCLUSION

Plaintiff's three negligence counts should be dismissed under the doctrine developed in *Garcia*, *Garcia*, and *Doe* because Plaintiff's damages, if any, will be fully compensated through the strict liability claim if Plaintiff proves that the sexual assault occurred. As to any surviving claim, including the strict liability count, the prayers for punitive damages should be stricken because there are insufficient allegations that Carnival committed intentional misconduct.

WHEREFORE, Defendant, Carnival Corporation, respectfully requests that the Court dismiss Counts II–IV and strike all prayers for punitive damages.

Respectfully submitted,

MASE SEITZ BRIGGS, P.A.
*Attorneys for Defendant*
2601 South Bayshore Drive, Suite 800
Miami, Florida 33133
Telephone:   (305) 377-3770
Facsimile:   (305) 377-0080

By:   */s/ William R. Seitz*
      WILLIAM R. SEITZ
      Florida Bar No. 73928
      wseitz@maselaw.com
      LAUREN N. CABEZA
      Florida Bar No. 1025668
      lcabeza@maselaw.com