UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 24-cv-22749-RAR

JANE DOE (A.C.),

Plaintiff,

v.

CARNIVAL CORPORATION,

Defendant.
_______________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

The Plaintiff, JANE DOE (A.C.), by and through undersigned counsel, hereby responds in opposition to Defendant, CARNIVAL CORPORATION'S (hereinafter "Carnival['s]"), Motion for Partial Judgment on the Pleadings [D.E. 18], as follows:

## I. FACTUAL BACKGROUND AND PROCEDURE

This matter involves the sexual assault and/or rape of the Plaintiff by Carnival's crewmember on or about September 28, 2023, while she was a passenger aboard the *Carnival Sunshine* cruise ship. [D.E. 1, ¶¶7, 14-16].

During the cruise, the Plaintiff became acquainted with a crewmember and employee of Defendant believed to be named Collet Madubeko (hereinafter "the Assailant"). [D.E.1, ¶8]. On or about the late evening of September 28, 2023, the crewmember Assailant went to the Plaintiff's cabin, where he proceeded to sexually assault and/or rape the Plaintiff. [Id. at ¶14-16].

On July 18, 2024, Plaintiff filed her Complaint alleging strict liability for rape/sexual assault against Carnival (Count I), negligent failure to warn against Carnival (Count II), negligent

security against Carnival (Count III), and general negligence against Carnival (Count IV). [D.E. 1].  On August 22, 2024, Defendant Carnival filed its Answer and Affirmative Defenses to Plaintiff's Complaint. [D.E. 13].

On September 16, 2024, Defendant filed its Motion for Partial Judgment on the Pleadings, which is the motion at issue herein. [D.E. 18].

As the following memorandum of law sets forth, Defendant's Motion for Partial Judgment on the Pleadings should be denied in its entirety because (1) Plaintiff can allege causes of action for both negligence and intentional tort,  (2) punitive damages have long been available under federal maritime law, and (3) Plaintiff's allegations involving intentional misconduct are more than sufficient to show Plaintiff's plausible entitlement to punitive damages at this stage.

## II.  STANDARD FOR A MOTION FOR JUDGMENT ON THE PLEADINGS

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The "'[p]leadings include the complaint and answer.'" *Reeves v. United States*, 526 F. Supp. 3d 1226, 1232 (S.D. Fla. 2021) (citing  *Pyure Brands, LLC v. Nascent Health Sci. LLC*, No. 1:18-cv-23357, 2019 WL 7945226, at *2 (S.D. Fla. Mar. 4, 2019) (citing Fed. R. Civ. P. 7(a); Fed. R. Civ. P. 10(c)).

In review of a motion for judgment on the pleadings, the court "'accept[s] as true all material facts alleged in the non-moving party's pleading, and view those facts in the light most favorable to the non-moving party.'" *ConSeal Int'l Inc. v Neogen Corp.*, No, 19-cv-61242, 2020 WL 4736203, *3 (S.D. Fla. 2020) (quoting *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014)(citing *Hawthorne v. MAC Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)).  A motion for judgment on the pleadings is to be "'governed by the same standard as a Rule 12(b)(6)

motion to dismiss.'" *Reeves*, 526 F. Supp. 3d at 1232. (quoting *Guarino v. Wyeth LLC*, 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011)).

To survive dismissal, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This standard "does not require 'detailed factual allegations,'" but it requires a "plausible claim for relief..." *Iqbal*, 556 U.S. at 679 (citation omitted). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). When considering a motion for dismissal, the pleadings are construed broadly, and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *See Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006).

## III. PLAINTIFF'S ALLEGATIONS SUPPORT CAUSES OF ACTION FOR BOTH NEGLIGENCE AND AN INTENTIONAL TORT

In its motion, Defendant first claims that Plaintiff's strict liability claim precludes her negligence claims. Defendant, however, is incorrect.

Although a "Defendant cannot be found negligently liable for the commission of the same intentional tort for which Defendant is strictly liable," **a Plaintiff is permitted to plead more than one cause of action.** *See Dianna Michelle Garcia v. Carnival Corporation*, No. 13-cv-21628, 2014 WL 12531509, at *3 (S.D. Fla. 2014) ("*D.M. Garcia v. Carnival*") (citing *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 915–16 (11th Cir. 2004)); *see also Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164 (11th Cir. 2021) ("A plaintiff is the master of his or her complaint and may choose to proceed under a theory of direct liability, vicarious liability, or both.").

Defendant primarily relies on the following three cases to support its position: (1) *Gema Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334 (S.D. Fla. 2012) ("*G. Garcia v. Carnival*"), (2)

*D.M. Garcia v. Carnival*, and (3) *Doe v. Norwegian Cruise Lines, Ltd.*, No. 23-CV-24236, 2024 WL 3916800 (S.D. Fla. Aug. 22, 2024). Yet these cases are easily distinguishable. For starters, unlike this case, the cases of *G. Garcia v. Carnival* and *D.M. Garcia* both involved the *same* conduct as the basis for both an intentional tort and negligence claims. In contrast, the instant matter involves *separate and distinct* conduct as the basis for the intentional tort and negligence claims.

Specifically, in *G. Garcia*, the plaintiff alleged that the crewmembers grabbed her, escorted her to her room, and refused to allow her to leave her room, and the alleged conduct formed the basis of her claims for intentional torts of assault, battery, and false imprisonment, as well as the basis of her claim for negligence. *See* 838 F.Supp.2d. at 1336.

Similarly, in *D.M. Garcia*, the plaintiff alleged that the same conduct—being separated from her husband and confined to her stateroom, as well as being allegedly assaulted, battered, and sexually assaulted by crewmembers—as the basis for her strict liability and negligence claims. *See* 2014 WL 12531509 at *1, Of note, the plaintiff in that case was proceeding *pro se* at the summary judgment phase of the proceedings, and she had not "provided any evidence regarding the training or supervision of Carnival's security personnel, much less any evidence Carnival's training or supervision was conducted in such a way that could lead a reasonable trier of fact to conclude there was negligence on the part of Carnival." *Id*. at *3.

The third case that Defendant relies on to support its position that the negligence claims should be dismissed (*Doe v. Norwegian Cruise Lines*), is also sufficiently different from the current matter, as with the *Garcia* matters. For example, in *Doe*, the alleged assailant was an employee of the security company which Norwegian hired to provide security for the weekend. *See Doe*, 2024 WL 3916800 at *1. In *Doe*, the claim for negligence involved Norwegian's failure

to prevent the intentional tort, while alleging Norwegian was strictly liable for the intentional tort. *See id.* at *4. However, in the instant matter, the Plaintiff alleges *separate and distinct* conduct as the basis for her claims for intentional tort and negligence claims.

Further to that point, the instant matter involves both the allegation of an intentional tort—a sexual assault/rape by a Carnival crewmember (Count I), as well as allegations of behavior separate and distinct from the sexual assault/rape. Such separate allegations consist of: 1) Carnival failing to "warn passengers of the prevalence and/or dangers of sexual assaults and/or rape aboard Defendant's vessels;" 2) Carnival failing to "warn passengers or the prevalence and/or dangers of being targeted by workers aboard Defendant's vessels;" 3) Carnival failing to "warn passengers of the lack of adequate security aboard the vessel," (Count II – Failure to Warn); 4) Carnival "failing to provide adequate supervision and/or security in public areas aboard the vessel, including but not limited to, passenger cabins and hallways;" 5) Carnival "failing to provide adequate supervision and/or security to protect passengers aboard the vessel;" 6) Carnival "failing to adequately monitor passengers aboard the vessel;" (Count III – Negligent Security); and 7) Carnival "failing to promulgate and/or enforce adequate policies and/or procedures designed to prevent individuals working aboard the vessel from targeting passengers." (Count IV – General Negligence). [D.E.1]. These allegations involve conduct that is sufficiently separate and distinct to survive Defendant's motion.

In fact, recently, in the matter of *Jane Doe (A.K.) v. MSC Cruises S.A.*, No. 24-cv-20277 (S.D. Fla. Jan. 24, 2024), the plaintiff pled an intentional tort of sexual assault by a cruise employee and alleged behaviors separate and distinct from the sexual assault in her negligence claims, similar to the present matter. The defendant in that case filed a motion raising similar arguments as those raised by Defendant herein. On June 26, 2024, the Court denied defendant's motion to dismiss for

the intersection of negligence and strict liability claims. (A copy of the Order is attached hereto as Exhibit 1.)  In doing so, the Court reasoned as follows: "in holding that cruise-line defendants are strictly liable for assaults committed by crew members, [the Eleventh Circuit] did not state that plaintiffs could no longer alternatively plead their claims, which Federal Rule of Civil Procedure 8(d) allows plaintiffs to do.'" *See* Exhibit 1, p. 4 (alteration in original). This is the same situation in the current matter, and as such, the separate and distinct behavior alleged as the basis of the intentional tort and negligence claims survive.

Furthermore, as *Gema Garcia* points out, "…Garcia is correct to assert that the presence of intentional tortious activity may constitute evidence of negligence in select circumstances…" 838 F.Supp.2d at 1337.  This is one of those circumstances.  For all of the foregoing reasons, Counts II, III, and IV of Plaintiff's Complaint should not be dismissed, and Defendant's motion should be denied.

## IV. PUNITIVE DAMAGES

Next, Defendant argues that punitive damages are not available to the Plaintiff because (1) punitive damages require a showing of intentional misconduct by the employer itself or a showing that the employee authorized or ratified its employee's tortious conduct, and (2) there is purportedly no allegation to support either in this case.  Once again, however, Defendant is incorrect.

### A. Standard for Claim of Punitive Damages

In *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404 (2009), the U.S. Supreme Court held that "[p]unitive damages have long been an available remedy at common law for wanton, willful, or outrageous conduct[,]" and that such remedy "extended to claims arising under federal maritime law." *Id.* at 409-11.  Thereafter, applying *Atlantic Sounding* to a maritime personal injury case, numerous courts in this district confirmed that "a plaintiff may recover punitive damages

under general maritime law, consistent with the common-law rule, where the plaintiff's injury was due to the defendant's 'wanton, willful, or outrageous conduct.'" *Lobegeiger v. Celebrity Cruises, Inc.*, No. 11-21620-CIV, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011) (citing *Atlantic Sounding*, 129 S. Ct. at 2566)); *see also Doe v. Royal Caribbean Cruises, Ltd.*, 11-23323-CIV, 2012 WL 920675, at *4 (S.D. Fla. Mar. 19, 2012); *Fiorillo v. Carnival Corp.*, 12-21599-CIV, 2013 WL 632264, at *2 (S.D. Fla. Feb. 20, 2013); *Hastings v. Carnival Corp.*, CV 15-20239-CIV, 2015 WL 12778785, at *4 (S.D. Fla. Apr. 27, 2015); *Jackson-Davis v. Carnival Corp.*, 17-24089-CIV, 2018 WL 1468665, at *5 (S.D. Fla. Mar. 23, 2018).

Other courts agree that punitive damages are available under general maritime law, but disagree with the above cases as to "what standard of liability should apply in determining whether punitive damages may be recovered for a particular maritime claim." *Bonnell v. Carnival Corp.*, 13-CV-22265, 2014 WL 12580433, at *3 (S.D. Fla. Oct. 23, 2014). Specifically, the *Bonnell* Court held that the Eleventh Circuit opinion preceding *Atlantic Sounding* – i.e., *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421 (11th Cir. 1997) – was "controlling on this issue," and as such, required "a showing of intentional misconduct" to recover punitive damages. *Bonnell*, 2014 WL 12580433, at *3 (citing *Amtrak*, 121 F.3d at 1429).[1]

To demonstrate "intentional misconduct" for purposes of recovering punitive damages, plaintiffs must show that "the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that

---

[1] In doing so, the *Bonnell* Court acknowledged "that the source of the 'intentional misconduct' standard of liability *Amtrak* adopts is unclear [because] [p]rior precedent had established that punitive damages were available in a maritime negligence action where the 'wrongdoer has acted willfully and with gross disregard for the plaintiff's rights.'" *Bonnell*, 13-CV-22265, 2014 WL 12580433, at *3 n.3 (S.D. Fla. Oct. 23, 2014) (citing *Complaint of Merry Shipping, Inc.*, 650 F.2d 622, 625 (5th Cir. Unit B 1981); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (decisions of the Fifth Circuit handed down prior to October 1, 1981 are binding precedent in the Eleventh Circuit)).

knowledge, intentionally pursued that course of conduct, resulting in injury or damage." *Bonnell*, 2014 WL 12580433, at *4 (citing *Mee Indus. v. Dow Chemical Co.*, 608 F.3d 1202, 1220 (11th Cir. 2010)).

Based on the above case law, allegations involving intentional misconduct are more than sufficient to show a plaintiff's plausible entitlement to punitive damages at this stage, and thus Plaintiff's demand for punitive damages is valid, as demonstrated next.

**B. The Plaintiff's allegations are sufficient to seek punitive damages at this stage.**

Defendant argues that the Complaint fails to allege sufficient wrongdoing to warrant punitive damages. The Plaintiff addresses separately the strict liability claim (Count I) and the negligence claims (Counts II-IV).

**1. *Count I: Strict Liability***

The Eleventh Circuit has unequivocally held that a cruise line is "strictly liable for crew member assaults on their passengers during [a] cruise." *Doe v. Celebrity Cruise Lines, Inc.*, 394 F.3d 891, 913 (11th Cir. 2004). More than a century of judicial precedent indicates that this type of liability derives from the duty of absolute protection that a common carrier owes its passengers. *Id.* at 904-13; *see New Jersey Steam-Boat Co. v. Brockett*, 121 U.S. 637, 645-46 (1887) ("[A] common carrier is bound, as far as practicable, to protect its passengers, while being conveyed, from violence committed by strangers and co-passengers, and undertakes absolutely to protect them against the misconduct of its own servants engaged in executing the contract."); *New Orleans & N.E.R. Co. v. Jopes*, 142 U.S. 18, 27 (1891) ("owing to the peculiar circumstances which surround the carrying of passengers… a more stringent rule of liability has been cast upon the employer, and he has been held liable although the assault was wanton and willful, and outside the scope of the employment."); *see also Doe (T.C.) v. Celebrity Cruises, Inc.*, 389 F.Supp.3d 1109 (S.D. Fla. 2019).

The matter of *Doe (T.C.)* is particularly instructive because it involved a sexual assault committed by a crewmember on a passenger while onboard a cruise line's vessel. The Court determined whether the cruise line could be subject to punitive damages based on a crewmember's sexual assault of a passenger. The Court held that "[v]iewing the alleged facts as true and in the light most favorable to Plaintiff, it is plausible that the Assailant knew such behavior was wrong and would cause harm to Plaintiff, yet nevertheless he persisted and in doing so caused significant injury[,]" which were "actions [that] could very well rise to the level of intentional misconduct." *Doe (T.C.)*, 389 F. Supp. 3d at 1117.

The Court further found that the crewmember assailant's "***intent would carry to [the cruise line]* as a result of it being strictly liable for the intentional misconduct of its crewmembers**[.]" *Id.* (emphasis added). As such, the Court "ultimately f[ou]nd that it would [be] inappropriate… to preclude Plaintiff from pursuing punitive damages on this Count, based on these allegations." *Id.*

Herein, Plaintiff alleges that "[o]n or about September 28, 2023, the Plaintiff was on the Lido deck aboard the vessel trying to get a towel from Defendant's crewmembers" when the Assailant "pretended to not be able to find the Plaintiff in the system to hand her a towel, he asked Plaintiff for her cabin number" and "for her WhatsApp number, so that he could message her." [D.E. 1, ¶¶11-13]. Later that same evening, "the Assailant called the Plaintiff on WhatsApp and asked the Plaintiff to call him from her cabin phone" before the Assailant went to the Plaintiff's cabin. [Id. at ¶¶14-15]. While in the cabin, "the Assailant aggressively grabbed Plaintiff's face and tried to kiss her" before "forcefully us[ing] his hands to spread the Plaintiff's legs and penetrat[e] her digitally and orally," and "push[ing] the Plaintiff to the floor where the Assailant proceeded to rape her." [Id. at ¶16]. After which, "the Assailant told the Plaintiff to check to see if anyone was in the hallway so that he could leave and return to the crew quarters." [D.E. 1, ¶¶11-18]. The Plaintiff further alleges the Assailant was employed and controlled by Carnival, and he was a member of the crew, acting in the course and scope of his employment. [Id. at ¶¶8-9].

These allegations are sufficient to state a plausible claim for an intentional tort against Defendant. *See Doe*, 394 F.3d at 917 ("an intentional tort is '[a] tort committed by someone acting with general or specific intent [and] [e]xamples include battery, false imprisonment, and trespass to land.'") (citing Black's Law Dictionary at 1527 (8th Ed. 1999)) (alteration in original); *Doe No. 3 v. Epstein*, 08-80232-CIV, 2009 WL 383330, at *4-5 (S.D. Fla. Feb. 12, 2009) (surviving motion to dismiss sexual assault claim); *see also Doe (T.C.)*, 389 F. Supp. 3d at 1116 (citing same).

As in *Doe (T.C.)*, because Plaintiff has stated a plausible claim for sexual assault and/or rape by a crewmember, the law allows Plaintiff to hold the cruise line strictly liable for the crewmember's conduct. *Doe (T.C.)*, 389 F. Supp. 3d at 1116-17 (citing *Doe*, 394 F.3d at 917). Also as in *Doe (T.C.)*, viewing the alleged facts that "the Assailant told the Plaintiff to check to see if anyone was in the hallway so that he could leave and return to the crew quarters" as true and in the light most favorable to Plaintiff, it is plausible the Assailant knew that sexually assaulting and/or raping the Plaintiff was wrong and would cause harm to the Plaintiff, yet nevertheless the Assailant persisted and caused significant injury in doing so.

Accordingly, this Honorable Court should find that Plaintiff may proceed to pursue punitive damages on the vicarious liability count (Count I).

**2. *Counts II-IV: Negligent Failure to Warn, Negligent Security, and General Negligence***

Counts II-IV plead negligent failure to warn, negligent security, and general negligence.

In the case of *Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317 (S.D. Fla. 2020) ("*Doe v. Carnival*"), the Court considered a similar motion to dismiss the plaintiff's request for punitive damages in a sexual assault claim against a cruise line and its employee. The *Doe v. Carnival* plaintiff "alleged that [the cruise line's] failure to warn of the risks of sexual assault on board resulted in a 'high probability that injury or damage' to a vulnerable passenger… could occur—particularly given the troubling statistics surrounding sexual assault on cruise ships." *Id.* at 1326 (citation omitted). Based on those allegations, the Court found that the plaintiff "adequately

alleged entitlement to punitive damages 'to the extent' that [the cruise line] was 'more than simply negligent.'" *Id.* (citation omitted).

Herein, as in *Doe v. Carnival*, Plaintiff alleges "Defendants knew or should have known that a sexual assault and/or rape was reasonably foreseeable, considering the prevalence of sexual assaults aboard Defendant's vessels." [D.E. 1, ¶19]. For example, as alleged in the Complaint, between 2016 and 2023, there were a total of 224 sexual assaults reported on Defendants vessel, and 25 of such assaults being committed by crewmembers, this the subject case. [Id.]. The Complaint alleges that Carnival was on notice of these incidents because Carnival itself reported these incidents directly to the Department of Transportation and/or the Federal Bureau of Investigation. [Id.].

In addition, the Complaint goes on to allege that "Defendant knew or should have known that it was highly probable for passengers to be sexually assaulted and/or raped while aboard Defendant's vessel, considering prior similar incidents occurring on Defendant's vessels." [Id. at ¶21]. The prior sexual assault and/or rape committed by crewmembers/employees on cruise ships is then listed in the Complaint as follows:

  a. On or about September 11, 2022, a passenger (C.C.) was sexually assaulted by a crewmember while aboard the Carnival Liberty.

[Id. at ¶21].

The Complaint further alleges that although Defendant was on notice of the foregoing incident(s), "Defendant fails to take adequate steps, or provide adequate security to prevent such rapes and/or sexual assaults and fails to warn its passengers of the growing epidemic of rape and sexual assault at sea." [Id. at ¶20]. Pursuant to the allegations of the Complaint, which are taken as true, "Defendant's motive for failing to warn its passengers was financial in nature; that is, Defendant willfully chooses not to warn its passengers about rapes and sexual assaults aboard its ships so as not to scare any prospective passengers away." [Id.].

Accordingly, viewing the alleged facts as true and in the light most favorable to Plaintiff, it is plausible that Defendant knew its crewmembers were sexual assaulting and raping passengers aboard their vessel and that such conduct would continue and would harm other passengers; yet despite its knowledge, Defendant chose to not warn its passengers for financial reasons and/or failed to provide adequate supervision and/or security. This falls within the precise type of "intentional misconduct" that may warrant punitive damages. *See Bonnell*, 2014 WL 12580433, at *4 (finding that, to demonstrate "intentional misconduct" for the purposes of recovering punitive damages, plaintiffs must show that "the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage") (citing *Mee Indus.*, 608 F.3d at 1220).

Indeed, numerous courts have denied motions to dismiss or strike plaintiffs' request for punitive damages in maritime negligence claims. *See, e.g., Doe v. Carnival*, 470 F. Supp. 3d at 1326; *Tang v. NCL (Bahamas) Ltd.*, 472 F. Supp. 3d 1227, 1231 (S.D. Fla. 2020); *Irvin v. NCL (Bahamas) Ltd.*, 20-20929-CIV, 2020 WL 5937900, at *3 (S.D. Fla. Sept. 28, 2020); *Baldoza v. Royal Caribbean Cruises, Ltd.*, 20-22761-CIV, 2021 WL 243676, at *12 (S.D. Fla. Jan. 25, 2021). As some of those courts acknowledged, it is an issue more appropriately raised in a motion for summary judgment, once discovery reveals the extent of Defendants' conduct. *See Doe v. Carnival*, 470 F. Supp. 3d at 1326; *see also Baldoza*, 2021 WL 243676, at *12.

As such, this Honorable Court should find that Plaintiff may proceed to pursue punitive damages on the negligence counts.

Dated: October 1, 2024

Respectfully submitted,

LIPCON, MARGULIES
& WINKLEMAN, P.A.
*Attorneys for Plaintiff*
2800 Ponce de Leon Blvd., Suite 1480
Coral Gables, Florida 33134

Telephone: (305) 373-3016
Facsimile: (305) 373-6204

By: */s/ Jacqueline Garcell*
**JACQUELINE GARCELL** (FBN 104358)
jgarcell@lipcon.com
**ELIZABETH IRAZABAL** (FBN 1010997)
eirazabal@lipcon.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 1, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

By: */s/ Elizabeth Irazabal*
**ELIZABETH IRAZABAL**

**SERVICE LIST**
***Jane Doe (A.C.) v. Carnival Corp.***
**Case No. 24-cv-22749-RAR**

Jacqueline Garcell, Esq.
jgarcell@lipcon.com
Elizabeth Irazabal, Esq.
eirazabal@lipcon.com
LIPCON, MARGULIES
& WINKLEMAN, P.A.
2800 Ponce de Leon Blvd., Suite 1480
Coral Gables, Florida 33134
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204
*Attorneys for Plaintiff*

Curtis J. Mase, Esq.
cmase@maselaw.com
William R. Seitz, Esq.
wseitz@maselaw.com
Lauren N. Cabeza, Esq.
lcabeza@maselaw.com
MASE SEITZ BRIGGS, P.A.
2601 s. Bayshore Drive, Suite 800
Miami, Florida 33133
Telephone: (305) 377-3770
Facsimile: (305) 377-0080
*Attorney for Defendant*