UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-22749-RAR

**JANE DOE (A.C.)**,

    Plaintiff,

v.

**CARNIVAL CORPORATION**,

    Defendant.
_____/

## ORDER GRANTING IN PART DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

**THIS CAUSE** is before the Court on Defendant Carnival Corporation's ("Carnival") Motion for Partial Judgment on the Pleadings ("Motion"), [ECF No. 18], filed on September 16, 2024. The Court has reviewed the Motion; Plaintiff's Complaint, [ECF No. 1]; Defendant's Answer, [ECF No. 13]; Plaintiff's Response to the Motion ("Response"), [ECF No. 21]; and Defendant's Reply in Support of the Motion ("Reply"), [ECF No. 22]. The Court also heard oral argument on the Motion on November 1, 2024 ("Hearing"), [ECF No. 26]. For the reasons discussed below and stated on the record during the Hearing, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Partial Judgment on the Pleadings, [ECF No. 18], is **GRANTED IN PART**.

## BACKGROUND

This is a cruise ship sexual assault case. Plaintiff alleges that on or about September 28, 2023, Defendant's crewmember sexually assaulted her in her cabin aboard the *Carnival Sunshine*. Compl. ¶¶ 7, 11–18. The crewmember was handing out towels on the ship's Lido deck. *Id.* ¶ 11. Plaintiff asked the crewmember for a towel. *Id.* ¶¶ 11–12. The crewmember said that he could

not find her in the system and asked for her cabin number and WhatsApp number so he could message her. *Id.* ¶¶ 12–13. The crewmember messaged Plaintiff throughout the day and called Plaintiff on WhatsApp later that evening. *Id.* ¶¶ 13–14. The crewmember then went to Plaintiff's cabin. *Id.* ¶ 15. Plaintiff let the crewmember in "with the intention of just talking with him." Once inside the cabin, the crewmember "aggressively grabbed Plaintiff's face and tried to kiss her" and then "forcefully used his hands to spread the Plaintiff's legs and penetrated her digitally and orally." *Id.* ¶ 16. The crewmember then left the cabin and Plaintiff immediately reported the incident to another crewmember. *Id.* ¶¶ 17–18.

Plaintiff brings four counts against Carnival: Strict Vicarious Liability for Rape/Sexual Assault (Count I); Negligent Failure to Warn (Count II); Negligent Security (Count III); and General Negligence (Count IV). Defendant moves for partial judgment on the pleadings on two grounds: (1) Counts II-IV (the negligence counts) should be dismissed because the strict liability claim precludes any negligence claims alleging that Defendant failed to prevent an intentional tort, Mot. at 6–8; and (2) all prayers for punitive damages should be stricken because punitive damages are only available in maritime law "upon a showing of intentional misconduct by the employer itself or a showing that the employe[r] authorized or ratified its employee's tortious conduct." Mot. at 8.

## LEGAL STANDARD

### I. Judgment on the Pleadings

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[j]udgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo, N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

"In determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party. If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Id.* (citation omitted); *see also Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 73 F.4th 934, 940 (11th Cir. 2023).

## II. General Maritime Law

General maritime law governs Plaintiff's claims. The elements of a claim for negligence in the maritime context are "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Newbauer v. Carnival Corp.*, 26 F.4th 931, 935 (11th Cir. 2022) (quotation omitted). A cruise line, as a common carrier, is also strictly liable for its crewmembers' intentional torts against passengers. *See Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 915–916, 918 (11th Cir. 2004).

"Punitive damages are not available for negligence claims in admiralty cases." *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) (citing *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. On Sept. 22, 1993*, 121 F.3d 1421, 1429 (11th Cir. 1997)). In maritime law, a plaintiff may only recover punitive damages upon a showing that the "plaintiff's injury was due to the defendant's 'wanton, willful, or outrageous conduct.'" *Lobegeiger v. Celebrity Cruises, Inc.*, No. 11-21620, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011) (quoting *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 409 (2009)) (other citation omitted). To establish intentional misconduct, Plaintiff must show that "the Defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would

result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damages." *Mee Indus. v. Dow Chemical Co.*, 608 F.3d 1202, 1220 (11th Cir. 2010).

## ANALYSIS

### I. Vicarious Liability and Negligence

Plaintiff argues that the Court must dismiss all of Defendant's negligence claims because this District has developed a "doctrine" that "[n]egligence claims cannot be raised with strict liability claims when the negligence claims are premised on a failure to prevent the intentional tort that gives rise to strict liability." Mot. at 6. The Court disagrees.

Plaintiff relies on a line of three cases in this District to support this "doctrine." In 2012, *Garcia v. Carnival Corp* ("*Garcia I*") considered plaintiff's allegations that defendant's employees beat her and locked her in a cabin after she had a disagreement with a bartender aboard a cruise ship. 838 F. Supp. 2d 1334 (S.D. Fla. 2012). There, plaintiff alleged defendant's strict liability for various intentional torts by its employees and also brought a general negligence count alleging 21 different theories of defendant's negligence, including negligence due to "[u]se of excessive force on [plaintiff]; and/or ... Assault and/or battery on [plaintiff]; and/or ... False imprisonment of [plaintiff]" as well as negligence in failing to prevent the intentional torts. *Id.* at 1337, 1337 n.3.

In addition to finding the general negligence claim to be an improper shotgun pleading, *Garcia I* found that plaintiff improperly attempted "to state a claim for negligence premised solely on the defendant's alleged commission of an intentional tort." *Garcia I*, 838 F. Supp. 2d at 1337. That is, insofar as plaintiff alleged that defendant was directly liable in negligence for committing the same acts that formed the basis of the intentional tort, such claim is not cognizable "because there is no such thing as the 'negligent' commission of an 'intentional' tort." *Id.* (quoting *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996) (finding that plaintiff could not bring a

claim against the City of Miami for "negligent use of excessive force")). But *Garcia I* did not find that a plaintiff can *never* bring a negligence claim where they also bring a related strict liability claim against the same defendant arising out of the same general set of facts. Indeed, as *Garcia I* recognized, "the presence of intentional tortious activity may constitute evidence of negligence in select circumstances." *Garcia I*, 838 F. Supp. 2d at 1337.

In 2014, the identically styled *Garcia v. Carnival Corp.* ("*Garcia II*") considered allegations that a cruise operator's security personnel forcibly separated a woman from her husband, locked her in a cabin, and proceeded to assault, batter, and sexually assault her. No. 13-21628, 2014 WL 12531509, at *1 (S.D. Fla. Apr. 10, 2014). There, plaintiff brought one strict liability count and one general negligence count incorporating five different theories of negligence: "(1) failing to properly respond to a marital disagreement; (2) failing to properly separate [plaintiff] from her husband; (3) failing to use an appropriate amount of force under the circumstances; (4) failing to properly train its employees; and (5) failing to properly supervise its employees." *Id.* at *1, *3.

*Garcia II* found that plaintiff failed to state a claim as to any negligence theory and applied *Garcia I* to the negligence theories related to "failure to properly respond to a marital agreement, failure to properly separate the couple, and failure to use an appropriate amount of force under the circumstances." *Id.* As *Garcia II* noted, these three theories "stemm[ed] from the actions of Carnival's security personnel," the same individuals who committed the intentional torts. *Id.* Thus, these theories of negligence were "simply a recasting" of the intentional torts and were "improper to the extent [they] attempt[ed] to state a negligence cause of action against Carnival for the intentional torts allegedly perpetrated by its crewmembers and which encompass [plaintiff's strict liability claim]." *Id.* However, *Garcia II* did not apply *Garcia I* to plaintiff's negligence

theories for failure to train and failure to supervise, which were independently dismissed on the merits for failure to state a claim. *Id.*

Lastly, *Doe v. Norwegian Cruise Lines, Ltd.* also considered an alleged cruise ship sexual assault by a ship security guard. No. 23-24236, 2024 WL 3916800, at *3 (S.D. Fla. Aug. 22, 2024). Plaintiff brought two counts: one for strict liability for the sexual assault and another for general negligence on four separate negligence theories, including failure to vet security guards, failure to properly hire, failure to train and/or supervise, and failure to warn. *Id.* The court found that plaintiff's general negligence claim was an impermissible shotgun pleading because it commingled multiple claims into a single count and failed to differentiate the negligence and strict liability claims. *Id.* at *6. Citing *Garcia II*, the court also found that the negligence claims were "premised on the same intentional tort" as the strict liability claim. *Id.* at *4.

Taken together, these three cases do not articulate a "doctrine" that a plaintiff cannot bring negligence claims relating to a failure to prevent an intentional tort along with a strict liability claim for the same intentional tort. Rather, these cases point to the commonsense principle that there is no such thing as negligent commission of an intentional tort. Thus, a plaintiff cannot allege that a defendant negligently committed the same intentional tort through the same conduct for which the defendant is strictly liable. These cases also recognize that there may be situations where a single general negligence claim presents multiple theories of negligence—similar to a shotgun pleading—making it impossible to discern the factual basis of the negligence claim or to differentiate it from the intentional tort underlying the strict liability claim. Under these circumstances, general negligence claims such as those brought in *Garcia I*, *Garcia II*, and *Doe v. Norwegian Cruise Lines, Ltd.*, resemble a generalized claim that the defendant negligently committed the same intentional tort for which the defendant is strictly liable. But it is not the case

that a defendant's strict liability for an intentional tort precludes other negligence claims against that defendant arising out of independent conduct.

Indeed, other cases in this District have acknowledged that a plaintiff may simultaneously bring a strict liability claim and negligence claims where the negligence claims are clearly grounded in independent conduct, even when they relate to the same core set of facts as the intentional tort. In *Doe v. MSC Cruises S.A.*, the court considered a case almost identical to the instant case: a cruise ship sexual assault where plaintiff brought four counts, including "Strict Liability for Sexual Assault/Rape (Count I); Negligent Failure to Warn (Count II); Negligent Security (Count III); and General Negligence (Count IV)." *See* No. 24-20277, 2024 WL 4370006, at *1 (S.D. Fla. June 26, 2024). There, the court found that plaintiff could proceed on both her strict liability and negligence claims because the negligence claims were based on separate acts or conduct even though they were ultimately related to the same sexual assault that underlay the strict liability claim. *Id.* at *2 ("While plaintiffs cannot allege general negligence claims for the same torts for which they also have strict liability claims, negligence claims involving separate conduct (such as negligent hiring, retention, monitoring, and supervising) can be brought in conjunction with strict liability claims."). Although the court allowed the general negligence claim to proceed, the general negligence claim in that case appears to have been premised on a single theory of negligence—that defendant negligently failed "to promulgate and/or enforce adequate policies and/or procedures designed to prevent individuals working aboard the vessel from targeting passengers"—allowing the court to distinguish clearly between the conduct underlying the negligence claim and the conduct underlying the strict liability claim. *Id.*

*Doe v. NCL (Bahamas) Ltd.*, another cruise ship sexual assault case, followed a similar pattern. No. 18-20060, 2018 WL 3848421, at *1 (S.D. Fla. Aug. 13, 2018). In that case, plaintiffs

brought both a strict liability count and a general negligence count incorporating various theories of negligent hiring, retention, monitoring, and supervising. *Id.* Although the court found that plaintiffs did not state a claim on the merits as to the general negligence count, it nevertheless allowed plaintiffs to re-plead their negligence claims to the extent they did not "completely overlap with the acts that the Plaintiffs are seeking relief for in" their strict liability claim. *See id.* at *2–3. As the court explained, "to the extent the Plaintiffs are attempting to allege a general negligence claim for the torts it alleges [the employee] committed in [the strict liability count], [the general negligence count] is improperly pled[,]" but, "to the extent the Plaintiffs can allege a claim for negligent hiring, retention, monitoring, and supervising . . ., the Court concludes that such claims can be pled in conjunction with the strict liability claim." *Id.* at *2.

Thus, a plaintiff cannot simultaneously allege that a defendant is strictly liable for an intentional tort and that the defendant negligently committed the *same* intentional tort though the *same* conduct. That would be a legal *non sequitur*. For the same reason, a plaintiff bringing a general negligence claim under multiple different theories of negligence may fail to differentiate the factual basis for the various negligence claims from the facts underlying the strict liability claim, effectively pleading that the defendant negligently committed the same intentional tort for which it is strictly liable. But there is no reason why a plaintiff could not allege that a defendant negligently committed a *different* tort through *different* conduct, even if the negligence claim relates to the same facts as the strict liability claim. And there is nothing preventing a plaintiff from pleading these different theories of liability in the alternative in separate counts. *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021) ("A plaintiff is the master of his or her complaint and may choose to proceed under a theory of direct liability, vicarious liability, or both.").

Here, Plaintiff's claims for Negligent Failure to Warn and Negligent Security are premised on Defendants' failure to warn passengers of the risk of sexual assault on its cruises and failure to provide adequate security aboard the ship. This alleged conduct is distinct from the alleged conduct of Defendant's employee—the sexual assault—that forms the basis of the strict liability claim. This case is therefore distinct from cases like *Garcia I* and *Garcia II* where plaintiffs alleged that defendants were liable in negligence for directly committing the exact same acts alleged to form the intentional torts underlying their strict liability claims.

However, Plaintiff's general negligence claim fails to differentiate itself from Plaintiff's strict liability claim. The general negligence claim incorporates seven separate theories of negligence. *See* Compl. ¶ 43. As in *Doe v. NCL (Bahamas) Ltd.* and *Doe v. Norwegian Cruise Lines, Ltd.*, such commingling of negligence theories makes it difficult to discern what acts Defendant is alleged to be responsible for committing. This general negligence claim therefore resembles a generalized claim that Defendant negligently committed the same intentional tort underlying the strict liability claim, even if some of these theories (*e.g.*, failure to train, failure to supervise) theoretically could rest on independent conduct.

Accordingly, the Motion is due to be granted with respect to Count IV (general negligence) and due to be denied with respect to Count II (Negligent Failure to Warn) and Count III (Negligent Security), which are premised on conduct independent from the intentional tort.

## II. Punitive Damages

Defendant argues that Plaintiff cannot seek punitive damages in this matter because she has not alleged any intentional wrongdoing or willful and wanton misconduct by Carnival. The Court agrees.

It is well-established in maritime law that "punitive damages are not available for negligence claims." *Stires*, 243 F. Supp. 2d at 1322 (citing *Amtrak*, 121 F.3d at 1429). And where a plaintiff alleges that defendant is strictly liable for an intentional tort, punitive damages are only available if plaintiff alleges wanton, willful, or outrageous conduct by the defendant—not just by the defendant's employee. *See, e.g.*, *Garcia II*, 2014 WL 12531509, at *3 (finding punitive damages could not be assessed against a cruise operator strictly liable for an employee's sexual assault absent "wanton, willful, or outrageous conduct" by the cruise operator); *Stires*, 243 F. Supp. 2d at 1322–23 (striking claim for punitive damages despite acknowledging that the cruise line would be strictly liable for intentional torts arising from sexual assault); *see also The Amiable Nancy*, 16 U.S. 546, 553 (1818) (Story, J.) (holding that, at admiralty, "the original wrong-doers may be made responsible beyond the loss actually sustained, in a case of gross and wanton outrage; but the owners of the [wrong-doing ship], who are only constructively liable, are not bound to the extent of vindictive damages.").

Here, Plaintiff's negligence claims cannot support punitive damages. *See Stires*, 243 F. Supp. 2d at 1322. Likewise, Plaintiff's claim that Defendant is strictly liable for its employee's intentional tort does not adduce any additional facts indicating any willful, wanton, or outrageous conduct attributable to the Defendant itself. Therefore, all prayers for punitive damages must be stricken.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant Carnival Corporation's Motion for Partial Judgment on the Pleadings, [ECF No. 18], is **GRANTED IN PART** as follows.

1. Count IV is **DISMISSED** *without prejudice*.

2. The Motion to Dismiss is **DENIED** with respect to Counts II and III.

3. Plaintiff's prayer for punitive damages is **STRICKEN** from all surviving Counts.

**DONE AND ORDERED** in Miami, Florida, this 7th day of November, 2024.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**